FILED
August 06, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____pg_____
DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| OSVALDO MERCADO & RITA MERCADO, § § § *Plaintiffs*, § § v. § § SAFECO INSURANCE COMPANY OF INDIANA, § § § § *Defendant*. § | No. 1:23-cv-00902-DAE |

### PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

OSVALDO MERCADO & RITA MERCADO, Plaintiffs herein, files this their First Amended Complaint against Defendant, SAFECO INSURANCE COMPANY OF INDIANA, and, in support of their causes of action, would respectfully show the Court the following:

### I.   PARTIES

1.   Plaintiffs, OSVALDO MERCADO & RITA MERCADO, reside and own the property made the basis of this suit located at: 1215 Osprey Ridge Loop, Lago Vista, Texas 78645-8055 in Travis County, Texas (the "Property").

2.   Based on information and belief, Defendant, Defendant, SAFECO INSURANCE COMPANY OF INDIANA ("Defendant") is a foreign entity authorized to engage in the insurance business in the State of Texas and was duly served and has made an appearance herein. Defendant removed this case to this Court.

## II. JURISDICTION AND VENUE

3. This Honorable Court has personal jurisdiction over Defendant because at all times relevant hereto it provided insurance coverage in the State of Texas and Plaintiffs' causes of action arise out of its in-state business activities.

4. At the time this lawsuit was filed and to this day, Plaintiffs reside in Travis County, Texas. Plaintiffs are therefore a citizen of Texas for diversity jurisdiction purposes. Defendant has alleged that it is a citizen of Ohio for diversity jurisdiction purposes but Plaintiffs have no knowledge of the accuracy of this allegation. Defendant has been duly served and appeared and answered in state court. Defendant thereafter removed this matter to this Court.

5. Venue is proper in the Western District of Texas, because the Property at issue is located in this district, the loss occurred in this district, the claims asserted herein arose from one or more acts and/or omissions that occurred in this district, and Defendant has appeared and removed the state action to this Court. More specifically, the property is located in the Austin Division of the Western District of Texas.

## III. FACTUAL BACKGROUND

6. Plaintiffs (the "Mercados") entered into an agreement with Defendant to pay Defendant premiums in exchange for insurance coverage protecting the Mercados' Property.

7. The agreement was drafted by Defendant and assigned Policy Number OY7570973 (the "Policy"). The Policy's effective date was from November 1, 2020 through November 1, 2021 (referred to as the "Policy Period").

8. Coverage under the Policy covers "accidental direct physical loss to property" as a result of a covered loss such as a "Windstorm" and "Hail".

9. During the Policy Period a strong hail and windstorm hit the Property causing severe damage to the dwelling.

10. The Mercados subsequently filed a claim under the Policy.

11. Defendant assigned the claim, claim number 045874588-01 (referred to as the "Claim").

**A.     Investigations, Reports, and Denial**

12. Less than a month after the Mercados submitted their Claim for damages Defendant sent a position letter to the Mercados on or about June 23, 2021, denying the majority of the Claim and that any payment was owed to the Mercados.

13. Defendant admitted to finding wind damage to at least 33 concrete tiles as well as covered damage to the metal gutters at the Property. However, Defendant failed to record the additional tiles damaged by the wind, hail, and rainstorm.

14. Defendant also undervalued the damage it found, and therefore created an estimate for substantially less than the actual costs of damages. As a result, Defendant wrongfully determined the Mercados' damages did not rise above their deductible.

15. Defendant also failed to perform any research on the availability of the tiles or if the tiles were still being produced.

16. Following receipt of the letter, the Mercados disputed the findings and Defendant retained Rimkus Consulting Group, Inc. ("Rimkus") to inspect the Property.

17. Based on information and belief, Defendant retained Rimkus to inspect the Property based on its known industry bias in favor of insurance carriers such as Defendant and against property owners.

18. Rimkus inspected the Property in September of 2021. During its inspection Rimkus found numerous cracks to tiles across the roof at the Property.

19.     Moreover, Rimkus found evidence that the Mercados took care of the roof noting that a few tiles had been previously repaired.

20.     Despite finding evidence that the owners cared for the roof, and admitting to finding cracks to many other tiles across the roof, Rimkus determined the "concrete roof tiles had not been damaged by wind" in complete contradiction to Defendant's initial Claim determination.

21.     Rimkus now suddenly suggested the damage to the roof tiles was caused by foot traffic.

22.     Despite Defendant previously admitting to the Mercados that their roof and gutters was damaged by a severe hail and windstorm, Defendant now adopted the contradictory report from its bias consultants and sent the report to the Mercados in an attempt to improperly limits its liability on the Claim and force the Mercados to settle the Claim.

23.     In light of Defendant and its consultants inadequate investigation and unreasonable explanation of its Claim determination, the Mercados resubmitted their Claim for damages in July or 2022.

24.     Defendant then improperly set July 13, 2022 date as the "date of loss" for the Claim despite no such request being made.

25.     Despite later requests to change this "date of loss" to avoid any confusion Defendant continued to improperly use the July 13, 2022, date as the "date of loss".

26.     Following the Mercados' submission of covered damages under their Policy, Defendant assigned its adjuster Tamara Gates ("Gates") to the Mercados' Claim for covered damages.

27.     Gates then retained Hancock Claims Consultants ("Hancock") to go out and inspect the Property.

28.     In August of 2022, Hancock inspected the Property and recorded damage across the roof system.

29.     Hancock, similar to Defendant's first inspection and Claim determination, found over 100 tiles at the Property that were either displaced or cracked due to wind damage. Hancock also found evidence of a few prior repairs to roof tiles showing the Mercados cared for the roof.

30.     Despite finding substantial evidence of hail and wind damage that supported the Mercados Claim, Defendant instead decided to again hire another consultant that is also known to be biased in favor of insurance carriers like Defendant.

31.     Specifically, Gates hired ProNet Group, Inc. ("ProNet") to visit the Property and inspect the Claim.

32.     On or about October 5, 2022, Defendant's consultant ProNet sent its employee Wyatt A. Hardenberg, P.E. ("Hardenberg") to visit the Property. During the visit Hardenberg recorded numerous tiles being broken, lifted, misaligned, and displaced.

33.     Similar to previous investigations, the broken tiles ranged from cracks spanning across the face of tiles, to large missing pieces.

34.     Despite evidence at the Property that a severe hail and windstorm had recently hit the Property and damaged the roof Defendant simply accepted Hardenberg's conclusory statements that "[n]o covered storm related damages [were] found."

35.     But Defendant ignored obvious weather data provided by Hardenberg himself that clearly shows a severe windstorm hit and damaged the Mercados' Property and instead cherry-picked what weather source it would choose to analyze in order to deny the Claim.

36.     For example, Defendant used weather data recorded by the National Oceanic and Atmospheric Administration ("NOAA") when discussing hail and tornadic activity which records weather data reported by storm sporters.

37. Defendant used this NOAA data for hail and tornados to minimize hail that was recorded falling in Travis County on May 28, 2021 and to try and show a lack of "tornadic activity" in the area from 2018 through 2022.

38. But Defendant then switches and uses CoreLogic's (a non-NOAA database) "Wind Verification Report" that is based on algorithms to minimize severe windstorms at or around the Property from 2009 through 2022.

39. Defendant uses the Wind Verification Report to claim the most recent and most elevated wind event at the Property was on May 24, 2022, at 55 miles per hour.

40. However, Defendant completely ignores weather data from NOAA, as shown below, that records up to 70 knot (80 miles per hour) wind speeds on May 28, 2021 in surrounding counties and 56 knot (approximately 65 miles per hour) wind speed in Travis county itself.

All events for this episode:

| Location | County/Zone | St. | Date | Time | TZ | Type | Mag |
|---|---|---|---|---|---|---|---|
| Totals: | | | | | | | |
| TOW | LLANO CO. | TX | 05/28/2021 | 16:05 | CST-6 | Hail | 1.75 in. |
| GRANITE MTN | BURNET CO. | TX | 05/28/2021 | 17:00 | CST-6 | Thunderstorm Wind | 70 kts. EG |
| LAKE TRAVIS | TRAVIS CO. | TX | 05/28/2021 | 17:34 | CST-6 | Thunderstorm Wind | 56 kts. MG |
| DODD CITY | TRAVIS CO. | TX | 05/28/2021 | 17:35 | CST-6 | Thunderstorm Wind | 50 kts. MG |
| FOUR PTS | TRAVIS CO. | TX | 05/28/2021 | 17:38 | CST-6 | Thunderstorm Wind | 58 kts. MG |
| AUSTIN LAKEWAY ARPT | TRAVIS CO. | TX | 05/28/2021 | 17:40 | CST-6 | Hail | 0.75 in. |
| AUSTIN-BERGSTROM ARPT | TRAVIS CO. | TX | 05/28/2021 | 18:11 | CST-6 | Thunderstorm Wind | 52 kts. MG |
| FISKVILLE | TRAVIS CO. | TX | 05/28/2021 | 18:14 | CST-6 | Thunderstorm Wind | 52 kts. EG |
| HYE | BLANCO CO. | TX | 05/28/2021 | 18:15 | CST-6 | Hail | 1.00 in. |
| RED ROCK | BASTROP CO. | TX | 05/28/2021 | 18:31 | CST-6 | Tornado | EF0 |
| RED ROCK | BASTROP CO. | TX | 05/28/2021 | 18:35 | CST-6 | Thunderstorm Wind | 70 kts. EG |
| KERRVILLE | KERR CO. | TX | 05/28/2021 | 18:51 | CST-6 | Hail | 1.00 in. |
| LA GRANGE ARPT | FAYETTE CO. | TX | 05/28/2021 | 19:27 | CST-6 | Thunderstorm Wind | 70 kts. EG |
| SCHULENBURG | FAYETTE CO. | TX | 05/28/2021 | 19:36 | CST-6 | Thunderstorm Wind | 55 kts. MG |
| JOINER | FAYETTE CO. | TX | 05/28/2021 | 20:00 | CST-6 | Thunderstorm Wind | 61 kts. EG |
| LEON SPGS | BEXAR CO. | TX | 05/28/2021 | 20:11 | CST-6 | Thunderstorm Wind | 70 kts. EG |
| (SAT)SAN ANTONIO INT | BEXAR CO. | TX | 05/28/2021 | 20:32 | CST-6 | Thunderstorm Wind | 52 kts. MG |
| (SAT)SAN ANTONIO INT | BEXAR CO. | TX | 05/28/2021 | 20:33 | CST-6 | Thunderstorm Wind | 67 kts. MG |
| ALAMO HGTS | BEXAR CO. | TX | 05/28/2021 | 20:35 | CST-6 | Thunderstorm Wind | 52 kts. EG |
| WETMORE | BEXAR CO. | TX | 05/28/2021 | 20:35 | CST-6 | Thunderstorm Wind | 61 kts. EG |
| CEMENTVILLE | BEXAR CO. | TX | 05/28/2021 | 20:36 | CST-6 | Thunderstorm Wind | 70 kts. EG |
| LONGHORN | BEXAR CO. | TX | 05/28/2021 | 20:39 | CST-6 | Thunderstorm Wind | 70 kts. EG |
| ALAMO HGTS | BEXAR CO. | TX | 05/28/2021 | 21:10 | CST-6 | Flash Flood | |
| WETMORE | BEXAR CO. | TX | 05/28/2021 | 21:30 | CST-6 | Flash Flood | |
| COMSTOCK | VAL VERDE CO. | TX | 05/29/2021 | 02:30 | CST-6 | Hail | 1.00 in. |
| Totals: | | | | | | | |

41. Defendant ignores this NOAA wind data that clearly shows a high-speed windstorm occurred during the Policy Period that far exceeds 55 miles per hour.

42. Defendant ignored the evidence and instead attempted to only use weather data that tended to support its position to deny the Claim.

43. Further, Defendant completely ignored its initial field adjuster and Hancock's field adjuster's findings where both concluded there was clear wind damage to the tiles. Defendant instead continued to rely on the reports from its two biased consultants that Defendant itself admitted contradicted its original findings.

44. Following Defendant's incomplete investigation, the Mercados retained their own weather expert Thomas C. Moore ("Moore"), a certified consulting meteorologist, to investigate the windstorm that damaged the Property.

45. Moore created a detailed video report that discussed the severe windstorm that damaged the Property during the Policy Period.

46. Moore utilized radar data, wind reports, and additional software to discuss what storm likely damaged the Property and the severity of that storm.

47. A link to the video was provided to Defendant on or about March 27, 2023, for its review to assist Defendant in its evaluation of the Claim.

48. However, as of June 19, 2023, Defendant had yet to view any of the video recordings via the links submitted to Defendant.

49. Defendant ignored material information throughout its investigation and continues to avoid additional data that tends to prove the Mercados' Claim is covered under the Policy.

50. Moreover, in addition to the skewed and inaccurate report prepared by Hardenberg which Defendant relied on in making their determination that there is no coverage under the Policy, there

is an obvious conflict of interest in relation to Defendant utilizing ProNet Group, Inc. as their engineering firm to evaluate the Claim made the subject matter of this lawsuit.

51. ProNet works almost exclusively, if not exclusively, for insurers, just like Defendant. On a financial level, this means that most, if not all, of the yearly revenue ProNet makes (estimated to be $18.9 million USD) comes exclusively from insurers.

52. Furthermore, the average turnaround time for a quality engineering report is 20-30 working days (4-6 weeks) following an inspection. The inspection took place on Tuesday, October 5th, 2022. The final report was issued on Wednesday, October 11th, 2022. Calculating travel back from the inspection, weekends, etc., the turnaround time for this report was 4 working days. The speed at which the report was turned around indicates it to be mostly recycled from other reports and used pre-canned, predetermined language.

53. In fact, this apparent pre-canned, predetermined language is evidenced by [mention mclaid].

54. Defendant's outcome/denial letter is based entirely on a blind faith reliance on an inspection by professional engineering firm ProNet Group Inc., who based their report's conclusions and findings on an incorrect date of loss, as well as a flawed, unqualified, and inaccurate weather data analysis. In addition, ProNet Group Inc (ProNet) has a clear and obvious bias towards the insurer. These two factors singularly, and especially combined, render ProNet's analysis and report completely unreliable. And because Defendant blindly relied on said report, their determination as to the coverage of the Claim is wholly improper.

55. To date, Defendant has not paid the Mercados the value of their Claim under their Policy with Defendant. As a result, the Mercados have incurred additional damage and the increased costs of repair that were, and still are to this day, a natural, probable, and foreseeable consequence of

Defendant's failure to pay the amount owed on the Claim. For example, the costs of repair have increased substantially since Defendant's denial of the Claim.

56. Defendant and its retain adjuster and engineer assigned to the Claim failed to perform a proper inspection and as a result prepared a report that failed to include all of the covered damage sustained at the Property and undervalued the damage observed during the inspection.

57. Moreover, Defendant and its adjuster performed an outcome-oriented investigation of the Mercados' Claim, which resulted in a biased, unfair, and inequitable evaluation of the Mercados' losses for the covered property.

**B.     Policy Compliance**

58. The Mercados fully complied with all requirements under the Policy to properly notify the Defendant of the loss to their covered property.

## IV.     CAUSES OF ACTION

**A.     Breach of Contract**

59. Plaintiffs reassert and reallege the allegations set forth in paragraphs 6 through 58 of this Complaint.

60. Defendant entered into the Policy with the Mercados.

61. The Mercados' Property sustained damage during the Policy Period as a result of hail and wind, both covered causes of loss.

62. Defendant has breached the terms of the Policy by wrongfully denying portions of the Claim while underpaying covered damages instead of paying the full benefits owed to the Mercados under the Policy for a covered loss to the Property.

63. As a result of Defendant's breach of the Policy, the Mercados have sustained: (1) actual damages, (2) consequential damages (related to increased costs of construction and other related consequential damages), and (3) incurred reasonable and necessary attorney's fees to date.

**B.     Insurance Code Violations**

64. Plaintiffs reassert and reallege the allegations set forth in paragraphs 6 through 63 of this Complain.

*Prompt Payment of Claims Statute*

65. As set forth above, Plaintiff was insured under the Policy during the Policy Period.

66. During the Policy Period, a hail and windstorm swept through Travis County, Texas and damaged the Mercados' Property.

67. As a result, the Mercados gave proper notice of a claim under the Policy to Defendant.

68. Defendant is under an obligation to promptly pay the Mercados' Claim.

69. Defendant has delayed payment of the Mercados' claim for a time exceeding the period specified by statute by underpaying damages covered under the Policy and wrongfully denying damages clearly covered under the Policy. Defendant has yet to pay any amount on the Mercados' Claim.

70. Defendant failed to pay the full claim amount and delayed the payment on covered damage to the Property despite having all reasonably requested information from the Plaintiffs by June 21, 2021.

71. To date, Defendant has not tendered payment for all of the Mercados' damages arising out of their insurance Claim with Defendant.

72.     The failure of Defendant to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Article 542.058 of the Texas Insurance Code.

73.     As a result of the insurance code violations listed above, the Mercados, in addition to the Mercados' claim for damages, is entitled to statutory interest and attorney's fees as set forth in Article 542.060 of the Texas Insurance Code.

*541 Insurance Code Violations*

74.     Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

75.     Defendant violated § 541.051 of the Texas Insurance Code by misrepresenting the terms and benefits of coverage:

   a. That the damage to the Property was not covered under the Policy despite wind caused damage being a covered cause of loss pursuant to the Policy.

   b. That the Property required functional damage to the roof in order to qualify as covered damage.

*Violation of § 541.060(a)(1):*

76.     Defendant violated § 541.060(a)(1) by misrepresenting to the Mercados a material fact or policy provision relating to coverage at issue by undervaluing the damage to the Property.

77.     Additionally, Defendant has misrepresented the following:

   a. That the roofing system at the Property was not damaged enough to meet the deductible;

   b. That the date of loss was July 13, 2022 despite being told by the Mercados that the actual date of loss was earlier;

   c. That the roof was required to be functionally damaged before being considered covered damage despite the cosmetic endorsement only applying to a metal roof surface;

   d. That the damage to the roof was properly investigated and determined to not be covered under the Policy; and

   e. That the most recent elevated windstorm was only recorded at 55 miles per hour.

78. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(1), which proximately caused the Mercados damages.

*Violation of § 541.060(a)(2):*

79. Defendant violated § 541.060(a)(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim as insurer's liability had become reasonably clear that the covered damage caused substantial damage to the Mercados' Property.

80. Defendant has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement by:

   a. Making the misrepresentations at paragraph 77;

   b. Failing to properly investigate the roof damage;

   c. Failing to record the obvious evidence of covered damage across the entire roof when the damage to the tiles exhibited numerous cracks and breaks;

   d. Overlooking reports from its initial field adjuster and its consultant from Hancock who both determined there was wind damage to the roof tiles at the Property, and instead accepting the reports from two biased consultant companies that completely contradicted the obvious storm damage findings;

   e. Completely ignoring available weather data that tends to prove the damage to the Mercados' Property was caused by a severe windstorm;

   f. Never reviewing additional weather reports submitted to Defendant by the Mercados' and arbitrarily relying on its unsupported belief that the damage to the Property was not caused by a severe windstorm;

   g. Failing to write an estimate that includes obvious covered damage from hail and wind to the roof and leaving out essential material required to properly repair and replace the Mercados' Property; and

   h. Hiring an engineer in an effort to solely deny the Mercados' Claim, despite clear evidence of covered damage to the contrary.

81. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(2), which proximately caused the Mercados' damages.

*Violation of § 541.060(a)(3):*

82. Defendant violated § 541.060(a)(3) by failing to promptly provide the Mercados a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of the Claim or offer of a compromise settlement of a claim.

83. Defendant has failed to promptly provide the Mercados a reasonable explanation of the basis for Defendant's denial of the Claim. Defendant's position letter dated June 23, 2021 was based solely on its adjuster's outcome-oriented investigation.

84. Defendant failed to explain how the majority of the hail and wind damage across the roof was not covered and included in calculating the amount of loss when determining coverage. It merely sent an estimate to the Mercados with no explanation on what other damage it found to the Property and if there was other damage why it was not covered under the Policy.

85. Defendant merely sent a boilerplate letter denying payment on the Mercado's Claim based on its adjuster's unreasonable and baseless estimate.

86. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(3), which proximately caused the Mercados' damages.

*Violation of § 541.060(a)(4):*

87. Defendant has not provided the Mercados any notice as to whether their Claim has been denied or approved following the second inspection. Defendant investigated the Claim again on October 5, 2022. Despite this second inspection Defendant has yet to provide the Mercados any

letter stating the Carrier's position on the Claim. Further, on or about March 27, 2023, the Mercados provided Defendant with sworn proof of loss, an estimate for the reasonable and necessary cost to repair covered damages, and additional weather data that shows a severe windstorm hit the Property.

88. Defendant failed to consider this additional information and provide its new Claim determination to Plaintiffs following its receipt of this information.

89. There is no reason Defendant could not have issued a decision letter following its October 5, 2022 inspection or following the receipt of the additional weather data and estimate.

90. Defendant violated § 541.060(a)(4) by failing within a reasonable time to affirm or deny coverage of a claim to the Mercados following the additional inspection and information.

*Violation of § 541.060(a)(7):*

91. Defendant violated § 541.060(a)(7) by refusing to pay the Mercados' Claim without conducting a reasonable investigation with respect to the Claim.

92. Defendant has also refused to pay the Mercados' Claim without conducting a reasonable investigation by:

    a. Making the misrepresentations at paragraph 77;

    b. Failing to properly investigate the roof damage;

    c. Failing to record the obvious evidence of covered damage across the entire roof when the damage to the tiles exhibited numerous cracks and breaks;

    d. Overlooking reports from its initial field adjuster and its consultant from Hancock who both determined there was wind damage to the roof tiles at the Property, and instead accepting the reports from two biased consultant companies that completely contradicted the obvious storm damage findings;

    e. Completely ignoring available weather data that tends to prove the damage to the Mercados' Property was caused by a severe windstorm;

    f. Never reviewing additional weather reports submitted to Defendant by the Mercados'

      and arbitrarily relying on its unsupported belief that the damage to the Property was not caused by a severe windstorm;

  g. Failing to write an estimate that includes obvious covered damage from hail and wind to the roof and leaving out essential material required to properly repair and replace the Mercados' Property; and

  h. Hiring an engineer in an effort to solely deny the Mercados' Claim, despite clear evidence of covered damage to the contrary.

93. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(7), which proximately caused the Mercados damages.

94. Defendant has violated § 541.061 by making an untrue statement of material fact such as stating the date of loss was July 13, 2022.

**C.   DTPA Violations**

95. Plaintiffs reassert and reallege the allegations set forth in paragraphs 6 through 9294 of this Complaint.

96. At all material times hereto, the Mercados were consumers who purchased insurance products and services from Defendant.

97. Defendant is a "person" as defined by § 17.45 of the Texas Business and Commerce Code.

98. Defendant has violated the Texas Deceptive Trade Practices Act by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing; and engaging in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)–(3) in that Defendant took advantage of the Mercados' lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

99. Specifically, Defendant stated that a date of loss of "July 13, 2022" was being recorded in the Claim file because it could not be changed but claimed a note would be made regarding a new date of loss. However, Defendant then ignored the new date of loss request and never reinvestigated or reviewed new information regarding the Claim's date of loss. Defendant took advantage of the Mercados' lack of knowledge regarding information as it pertains to Defendant's duty to fully investigate the Claim and, instead of reviewing new information as Defendant suggested Defendant would, simply ignored the information in order to maintain its denial of the majority of the Mercados' Claim.

100. Upon information and belief, Defendant knowingly committed the acts complained of. As such, the Mercados are entitled to exemplary and/or treble damages and reasonable attorney's fees pursuant to the DTPA and Texas Insurance Code § 541.152(a)-(b).

**D.    Breach of The Duty of Good Faith and Fair Dealing**

101. Plaintiffs reassert and reallege the allegations set forth in paragraphs 6 through 100 of this Complaint.

102. The Mercados and Defendant entered into a valid and enforceable insurance policy.

103. Defendant owed the Mercados the common law duty of good faith and fair dealing.

104. Defendant breached the common law duty of good faith and fair dealing by wrongfully denying portions of the Claim while underpaying the rest, and delaying payment on the Claim when Defendant knew or should have known liability was reasonably clear.

105. Specifically, Defendant has breached the common law duty of good faith and fair dealing owed to Plaintiff by:

    a. Making the misrepresentations at paragraph 77;

    b. Failing to properly investigate the roof damage;

    c. Failing to record the obvious evidence of covered damage across the entire roof when the damage to the tiles exhibited numerous cracks and breaks;

    d. Overlooking reports from its initial field adjuster and its consultant from Hancock who both determined there was wind damage to the roof tiles at the Property, and instead accepting the reports from two biased consultant companies that completely contradicted the obvious storm damage findings;

    e. Completely ignoring available weather data that tends to prove the damage to the Mercados' Property was caused by a severe windstorm;

    f. Never reviewing additional weather reports submitted to Defendant by the Mercados' and arbitrarily relying on its unsupported belief that the damage to the Property was not caused by a severe windstorm;

    g. Failing to write an estimate that includes obvious covered damage from hail and wind to the roof and leaving out essential material required to properly repair and replace the Mercados' Property; and

    h. Hiring an engineer in an effort to solely deny the Mercados' Claim, despite clear evidence of covered damage to the contrary.

106. Upon information and belief, Defendant's actions were performed without due regard or care for the Claim process and were done intentionally or with gross negligence.

107. Defendant was aware at all times that its actions would result in the denial or underpayment of the Mercados' Claim, and cause mental anguish and thus extraordinary harm associated with the Mercados' Claim.

108. As a result of Defendant's acts and omissions, the Mercados sustained actual damages.

## V. ATTORNEY'S FEES

109. Plaintiffs reassert and reallege the allegations set forth in paragraphs 6 through 108 of this Complaint.

110. Plaintiffs engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorney's fees and expenses through trial and any appeal.

111. Plaintiffs are entitled to reasonable and necessary attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001–38.003 because Plaintiffs are represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

112. Plaintiffs further pray that they be awarded all reasonable attorney's fees incurred in prosecuting their causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

113. Plaintiffs further pray they be awarded all reasonable and necessary attorney's fees incurred in prosecuting Plaintiffs' DTPA causes of action above pursuant to § 17.50(d).

## VI.   CONDITIONS PRECEDENT

114. All conditions precedent to Plaintiffs right to recover have been fully performed or have been waived by Defendant.

## VII.   DEMAND FOR JURY

115. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs herein request a trial by jury.

## VIII.   PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs herein pray that, upon final hearing of the case, they recover actual damages, consequential damages, statutory interest, mental anguish and treble/exemplary damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiffs be awarded attorney's fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

*/s/Andrew D. Spadoni*
Preston J. Dugas III
pdugas@dcclawfirm.com
State Bar No. 24050189
Andrew D. Spadoni
aspadoni@dcclawfirm.com
State Bar No. 24109198

**DUGAS & CIRCELLI, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:    (817) 945-3061
Facsimile:    (682) 219-0761

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to counsel of record in accordance with the Federal Rule of Civil Procedure, on August 5, 2024, via e-service.

*via e-service*
Catherine L. Hanna
State Bar No. 08918280
channa@hannaplaut.com
Alexander P. Sheppard
State Bar No. 24106427
asheppard@hannaplaut.com

**HANNA & PLAUT, LLP**
211 E. Seventh Street, Ste. 600
Austin, Texas 78701
Telephone:    (512) 472-7700
Facsimile:    (512) 472-0205

**ATTORNEYS FOR DEFENDANT**

*/s/Andrew D. Spadoni*
Andrew D. Spadoni
